# FEDERAL DEFENDER SERVICES OF WISCONSIN, INC.

LEGAL COUNSEL

Craig W. Albee, Federal Defender
Krista A. Halla-Valdes, First Assistant

Joseph A. Bugni, Madison Supervisor
John W. Campion
Shelley M. Fite
Anderson M. Gansner
Gabriela A. Leija
Peter R. Moyers
Ronnie V. Murray
Tom E. Phillip
Joshua D. Uller
Kelly A. Welsh

22 East Mifflin Street
Suite 1000
Madison, Wisconsin 53703

Telephone 608-260-9900
Facsimile 608-260-9901

February 10, 2021

Honorable William M. Conley
United States District Court
120 North Henry Street
Madison, Wisconsin 53703

    Re:    *United States v. Gerardo Torres*
            Case No. 20-cr-048-wmc

Dear Judge Conley:

    I write in anticipation of the sentencing hearing scheduled for February 17, 2021, to respectfully request that the Court impose the mandatory minimum sentence of 180 months' imprisonment. The defense further requests that this sentence be ordered to run concurrently to any sentence that may be imposed in Taylor County case number 20-CF-29 and Rusk County case number 21-CF-23, as the conduct that forms the basis for each case is identical.

    At 24 years old, Mr. Torres is now facing sentencing for his first-ever criminal conviction. There is no doubt that the behavior that forms the basis for this conviction is reprehensible and has left some scarred individuals in its wake. Punishment no doubt is warranted—but a sentence that exceeds the 15-year mandatory minimum required under the law would be greater than necessary to provide just punishment, result in disparate treatment of similarly-situated offenders, and delay providing the rehabilitation Mr. Torres needs in the most effective manner to protect the public in the future. It would

FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.

Honorable William M. Conley
February 10, 2021
Page -2-

also fail to account for the exceptionally punitive nature of serving a sentence in the midst of a global pandemic—particularly for an individual who has never been sent to a prison before.

There is little about Mr. Torres that would indicate that he'd find himself in federal court, facing his first criminal conviction with such a significant mandatory minimum sentence. He described a good childhood. (PSR ¶ 77.) And while he witnessed gang violence from his balcony, he never adopted those physically violent behaviors. *Id.* Instead, the family moved to a better neighborhood where Mr. Torres had many friends and "found good people to spend his time with." (PSR ¶ 79.)

His unremarkable childhood was fractured when he was nine years old after he was sexually victimized while walking home from school one day. (PSR ¶ 78.) He reports never telling anyone what happened to him, but instead buried it deep inside for many years. But by age 12 he had his first debilitating panic attack, was diagnosed with anxiety disorder, and he began suffering from depression. (PSR ¶ 86.) The following year he started experimenting with marijuana to cope with his feelings of depression and anxiety. (PSR ¶ 78.)

A few years later, Mr. Torres began regularly abusing ecstasy to self-medicate, using it when he felt particularly anxious or depressed. (PSR ¶ 91.) When his grandfather died when Mr. Torres was 18 years old, he confessed to his father that he had developed a problem with the drug. *Id.* He and his father worked together to "ease" him out of his addiction. *Id.*

Notwithstanding his use of marijuana and ecstasy, Mr. Torres successfully graduated from high school. (PSR ¶ 92.) He worked a variety of jobs, holding one in 2016 for a year, and another at FedEx for a year in 2018. After that, he worked with his brother for about four months in 2019. From there, Mr. Torres was languishing—he continued to struggle with severe anxiety and depression, and he was suffering from intense suicidal thoughts. He resisted seeking professional help because he didn't feel comfortable confiding in strangers, instead only "speak[ing] with his family and confid[ing] in them when he was struggling." (PSR ¶ 89.)

Around this time, Mr. Torres began coming to Wisconsin to visit friends. Through those friends he became acquainted with his victims. Then completely contrary to the way he conformed himself during all of the years he'd been on the earth, he committed these despicable crimes. He describes himself as being in a deep, dark place during that

FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.

Honorable William M. Conley
February 10, 2021
Page -3-

time—knowing what he was doing but willfully ignoring the lasting harm he was causing. With time, he now sees that he, himself, was a link in a too-long chain of victims of sexual assault and that he has now done the unthinkable, adding his own victims to that chain. He expresses deep remorse and shame for the damage he has caused.

The need to punish Mr. Torres for his conduct, as well as the need to protect the public, is paramount here. A 15-year sentence for his first-ever criminal conviction is sufficient, but not greater than necessary, punishment. It also removes Mr. Torres from the community for nearly 12.75 years, factoring in good time, thereby protecting the public for the remainder of his twenties and into his mid-30s.

As it further relates to protection of the community, publicly available information about sex-offender risk assessments shows that Mr. Torres does not present a high risk of re-offense. The most commonly used sex-offender risk assessment, the Static 99, is available online—it is a very short 14-question evaluation—and it is also attached to this memorandum.[1] The workbook for evaluators is longer.[2] But without the need for specialized training, one can at least estimate a score:

1. Age at release (approximately 37 years old after a 15-year sentence that begins the day of sentencing, accounting for good time = 1);
2. Prior sentencing for sexual offense (0)
3. Juvenile arrest for a sex offense (0)
4. Less or more than one sentencing occasion every 15 years (0)
5. Sentencing occasion for non-contact sex offenses (0)
6. Any male victim (1)
7. Two or more young, unrelated victims (0)
8. Any unrelated victim (1)
9. Any stranger victim (0)
10. Any prior involvement with the criminal justice system (0)
11. Any prior sentencing occasions for anything (0)
12. Any community supervision violation (0)
13. Years free prior to index sex offense (0)
14. Any prior non-sexual violence sentencing occasion (0)

With a score of 3, Mr. Torres would be of "average risk" for re-offending. (Ex. 1 at 2.) This is without accounting for his participation in intensive sex offender treatment while in

---

[1] http://www.static99.org/pdfdocs/Static2002R_CodingForm_2016.pdf
[2] *See* http://www.static99.org/pdfdocs/st-99randst-2002revaluatorsworkbook.pdf.

FEDERAL DEFENDER SERVICES
   OF WISCONSIN, INC.

Honorable William M. Conley
February 10, 2021
Page -4-

custody, and aftercare upon his release, which will further reduce his risk to the community. But he will not begin sex offender treatment until he gets closer to his release date—so the longer his sentence is, the more removed his ability to get the treatment he needs will become.

In addition, the fifteen-year minimum sentence avoids sentencing disparities among those convicted of similar offenses. In 2019, The United States Sentencing Commission reported that the median sentence for sexual abuse was 15 years' imprisonment. (U.S. Sentencing Comm'n, *2019 Annual Report and Sourcebook of Federal Sentencing Statistics*, at 64 (Mar. 23, 2020))[3]. For comparison, the median sentence for murder was 20 years. *Id.* While his conduct in this was reprehensible, Mr. Torres should not receive a sentence similar to one convicted of murder.

Not only is Mr. Torres facing his first-ever term of imprisonment, he's doing so in the midst of a global pandemic. As the Court is thinking about the right sentence in this case, it cannot ignore the reality that serving a sentence right now is so much more punitive than serving a sentence was just eleven months ago. Being on 24-hour lockdown, in quarantine, suspension of programming and family visitation, and limits on religious counseling, no doubt takes a serious psychological toll and elevates the punitive nature of serving a sentence right now. With new, more contagious variants of the coronavirus now present in the United States, there is no end in sight to these severe custodial conditions.

The 15-year mandatory minimum sentence is sufficient to meet the statutory purposes of sentencing in this case. "It is appropriate for a court, when considering the type of sentence necessary to protect the public and deter future misconduct, to note the length of any previous sentences imposed. Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend." *United States v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005). As noted, Mr. Torres is a first offender who has never served a term of imprisonment before. He intends to use his time to better himself and set himself up for success upon his release. He sees now that his hesitance to participate in mental health treatment in the past likely played some part in where he now finds himself. He is prepared to fully engage in mental health

---

[3] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2019/2019-Annual-Report-and-Sourcebook.pdf

FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.

Honorable William M. Conley
February 10, 2021
Page -5-

treatment both while serving his sentence and when he's back in the community. For him, that will be the start to returning to a law-abiding and productive life.

    Thank you for your kind consideration.

                              Sincerely,

                              */s/ Kelly A. Welsh*

                              Kelly A. Welsh
                              Associate Federal Defender

Enclosures

cc:    AUSA Elizabeth Altman
       Mr. Gerardo Torres