UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

UNITED STATES OF AMERICA,

              Plaintiff,

     vs.                    Case No. 20-CR-048-WMC

GERARDO JUNIOR TORRES,        Madison, Wisconsin
                             February 17, 2021
              Defendant.     1:08 p.m.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

STENOGRAPHIC TRANSCRIPT OF VIDEOCONFERENCE
SENTENCING HEARING
HELD BEFORE THE HONORABLE WILLIAM M. CONLEY

APPEARANCES:

For the Plaintiff:
        Office of the United States Attorney
        BY: ELIZABETH ALTMAN
        Assistant United States Attorney
        222 West Washington Avenue, Suite 700
        Madison, Wisconsin  53703

For the Defendant:
        Federal Defender Services of Wisconsin, Inc.
        BY: KELLY A. WELSH
        Madison Branch Office
        22 East Mifflin Street, Suite 1000
        Madison, Wisconsin  53703

Also Present:
        Gerardo Junior Torres, Defendant
        Mariah Stieve, U.S. Probation Officer
        Andrea Erickson, Victim Witness Coordinator

CHERYL A. SEEMAN, RMR, CRR
Official Court Reporter
United States District Court
120 North Henry Street, Room 410
Madison, Wisconsin  53703
1-608-261-5708

1          (Called to order at 1:08 p.m.)

2          THE CLERK:  Case No. 20-CR-48, the *United States*

3 *of America v. Gerardo Junior Torres*, called for

4 sentencing.  May we have the appearances, please?

5          MS. ALTMAN:  Good afternoon, Your Honor.  The

6 United States appears by Elizabeth Altman.

7          MS. WELSH:  Good afternoon, Your Honor.

8 Mr. Torres appears by videoconference.  I'm his attorney,

9 Kelly Welsh.

10          THE COURT:  Good afternoon all.  I will begin

11 with you, Mr. Torres, to just confirm, based on your

12 written waiver, that it is your desire that we proceed

13 today by videoconference with your sentencing,

14 understanding that you have a right to appear before me in

15 person.  Although with the risk of COVID-19, there are

16 good reasons not to do so.  Does it continue to be your

17 desire, as reflected in your written waiver, that we

18 proceed on this basis?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  All right.  Then I do also have to

21 confirm with you that you've had an opportunity to read

22 and discuss with your counsel the presentence report, the

23 addendum to that report and the revised presentence

24 report.

25          THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  You've had a chance to talk about all

2   those things with your counsel?

3          THE DEFENDANT:  Yes.

4          THE COURT:  I'm sorry, Ms. Altman, you were going

5   to correct something?

6          MS. ALTMAN:  I just wanted to let everybody know

7   that it's not streaming and we have victims who are trying

8   to watch.

9          THE CLERK:  We have had problems logging into the

10  Zoom client with the Zoom app today.  And when I tried to

11  launch the streaming service, I got an error message that

12  said the meeting is not found or has expired.  I'm not

13  sure that that's a problem we can remedy today.

14         MS. ALTMAN:  I'm concerned then.  I certainly

15  don't want this not to go forward, but we have victims who

16  are trying to watch and who are unable to do so without it

17  being steamed.  And I just received a message that

18  they're --

19         THE COURT:  I appreciate the concern.  I

20  appreciate your raising it.  Is there any chance,

21  Mr. Wiseman, that if we were to all step out and restart

22  this again that it might engage or do you think it's a

23  more profound problem?

24         THE CLERK:  I think it's a larger problem.  We've

25  had the same problem with each of the judge's separate

1   accounts and we had to figure out a workaround to start

2   hearing.  My suggestion would be for the victims to join

3   the hearing by telephone and I could admit each of them

4   individually.  They would just show up as a telephone

5   number on the screen.

6           THE COURT:  Would we have the ability for them to

7   appear?

8           THE CLERK:  Yes.  They'd be able to speak and

9   hear, but we wouldn't see them.

10          THE COURT:  Oh, no, I'm sorry.  If we wanted them

11  to actually see the video stream, could we admit them into

12  this call?

13          THE CLERK:  We certainly could do that, yes.

14          THE COURT:  I think I would prefer that.  I

15  realize that that make take a few minutes because,

16  Ms. Altman, you'll need to convey to them the stream.  If

17  that's forwarded -- can she forward hers on, Mr. Wiseman,

18  to the victims to click on or would they need their own

19  admission?

20          THE CLERK:  She could definitely forward the same

21  invitation, same login ID, the same password.

22          THE COURT:  Ms. Altman, do you want to see if we

23  can accomplish that?  I don't know how many victims we're

24  talking about.

25          MS. ALTMAN:  Yes.  Ms. Erickson, our victim

1   witness coordinator, is on right now.  Eric, is that

2   something you can do right now -- or Andrea?  I'm sorry.

3            MS. ERICKSON:  It is something I can do right

4   now.  I also have concerns that I believe there are other

5   law enforcement agents and victim witness folks who are

6   online.  According to the YouTube stream, there have been

7   up to 11 different people waiting and I certainly can't

8   account for who those other folks would be.

9            THE COURT:  Well, I'm sure the defendant would

10  like to proceed.  But I will hear from you, Ms. Altman, as

11  to how you think we should proceed.  I don't want to deny

12  access, but I also don't know that -- I suppose the

13  alternative is the one suggested.  Should we go with the

14  audio option?

15           MS. ALTMAN:  Well, we still don't know who the

16  other people are.  I know two of them are law enforcement.

17  I can send the link to them.  Two of them are victim

18  witnesses.  My concern is the constitutional nature of

19  having a closed courtroom, that's my concern.  The victims

20  we can account for, law enforcement we can account for,

21  the public we can't.

22           THE COURT:  I don't know that the requirement for

23  the public is one that would prevent the hearing from

24  proceeding if we have a technical issue, so I'm inclined

25  to offer -- Andy, can we post the audio option?

1            THE CLERK:  By "post," do you mean simultaneously

2    or after the fact?

3            THE COURT:  Yes, exactly, and I'm not sure we

4    have a good answer for that.

5            THE CLERK:  I don't think we can do it

6    simultaneously.

7            THE COURT:  Yeah.  Then let's do this: Let's at

8    least -- hopefully we're inviting the victims in at this

9    time and they can participate by videoconference.  And if

10   there's an audio option, how would the officers or law

11   enforcement pursue that?

12           THE CLERK:  The invitation contains a link to

13   participate fully in the video and audio components.  It

14   also contains dial-in telephone numbers that anyone can

15   dial in that would allow them to hear and to speak, but

16   obviously they wouldn't be able to see or be seen.

17           THE COURT:  All right.  So, Ms. Altman, why don't

18   you offer both options to those you know who are

19   attempting to participate.

20           MS. ALTMAN:  Yes, Your Honor.  I'll do that right

21   now.

22           THE COURT:  Yes.  And, Ms. Erickson, if you'd be

23   good enough to also indicate to the victims that if

24   there's anyone else who was planning on participating by

25   YouTube that they have this same option by calling in as

1  well as by clicking on the video.

2        MS. ERICKSON:  Yes.  I'll turn off my --

3        THE COURT:  Sorry.  I was just going to ask, as

4  soon as -- I'm not sure how the victims will want to

5  identify themselves, if at all.  But Andy will have to

6  invite them in, so it probably would help to have some

7  kind of identification assigned, even if it's just -- I

8  think it was victim -- there was a stipulated victim and

9  charged conduct victim -- stipulated conduct victim and

10  charged conduct victim.  Perhaps we could admit them

11  that way.

12      Ms. Welsh, I haven't turned to you.  Any concerns

13  with proceeding on this basis, if we are able to, and

14  relatedly anyone that should be notified from the

15  defendant's family or friends?

16        MS. WELSH:  No, Your Honor, I don't have any

17  concerns proceeding in this manner.  We had no one that

18  anticipated logging in, that I'm aware of.

19        THE COURT:  Very good.  Mr. Torres, I apologize

20  for the delay, but we certainly want to honor the victim's

21  rights.  Not only is that required by statute, it's also

22  important.  So we'll wait and hopefully have at least

23  those representing the victim, or victims, participating

24  soon.

25      In the meantime, we'll go off the record and I'll

1    await an indication from Ms. Altman or Ms. Erickson if we

2    are able to proceed.

3            THE CLERK:  Judge, I just got a message from IT.

4    They said they might be able to get the stream going.

5    They're working on it right now.  So if we hold for a

6    couple of minutes, we might be able to get this resolved.

7            THE COURT:  Might get there.  Okay.  Very good.

8            MS. ALTMAN:  Thank you, Andy.

9            THE COURT:  I can see some benefit, I don't know

10   what -- and, Ms. Altman, you may already know -- and we're

11   are off the record at this time.

12       (Discussion held off the record.)

13           THE CLERK:  Okay.  I think that was quick.  We

14   are streaming on YouTube, I'm told, so we can begin.

15           THE COURT:  All right.  We're back on the record.

16   I think, for the benefit of those who are watching us

17   streaming on YouTube, we'll start from the beginning,

18   asking the clerk to call the case.

19           THE CLERK:  The United States District Court for

20   the Western District of Wisconsin is now in session.

21   District Judge William M. Conley presiding.  Case No.

22   20-CR-48, the *United States of America v. Gerardo Junior*

23   *Torres*, is called for sentencing.  May we have the

24   appearances, please?

25           MS. ALTMAN:  Good afternoon, Your Honor.  The

1  United States appears by Elizabeth Altman.

2       MS. WELSH:  Good afternoon, Your Honor.

3  Mr. Torres appears via videoconference and again I'm his

4  attorney, Kelly Welsh.

5       THE COURT:  Thank you both for your appearances.

6  And, Mr. Torres, I'll just -- we've already got it on the

7  record, but for the benefit of those who were not able to

8  join us immediately, I'll just confirm that you do wish to

9  proceed by this videoconferencing method because of

10  COVID-19 and that you have had an opportunity to both read

11  and discuss the presentence report, the addendum to the

12  report, and the revised presentence report with your

13  counsel.  Is that correct?

14       THE DEFENDANT:  Yes, Your Honor, that's correct.

15       THE COURT:  All right.  Then, Ms. Altman, by

16  agreement, I understand you're moving for an additional

17  one-level reduction for acceptance of responsibility --

18       MS. ALTMAN:  Yes, Your Honor.

19       THE COURT:  -- which I will grant.  And I'm not

20  sure if you -- my understanding is that there is no

21  specific request for restitution, although there are

22  statutory provisions that I'll need to address.  I just

23  want to confirm that as well.

24       MS. ALTMAN:  That is true, Your Honor, no

25  requests.

1          THE COURT:  Okay.  With that said then, I'll

2  await any statement on behalf of the victims through your

3  victim coordinator and I'll defer to you whether you wish

4  to do that now or after I address the guidelines.

5          MS. ALTMAN:  We can do that now, Your Honor.

6          THE COURT:  All right.  Then, Ms. Erickson, I

7  understand, for one of the victims, you're going to be

8  reading a statement.

9          MS. ERICKSON:  Thank you, Your Honor.  It's a

10  very quick statement.  We've been in contact with the

11  various victims' families in the case and who generally

12  said that they would like a long sentence.  The parent of

13  Minor Victim A did ask that we convey directly to you,

14  Judge, that this continues to affect them every day and

15  that they would actually like a life sentence for the

16  defendant.

17          THE COURT:  Understood.  And they're aware that

18  there's a statutory cap of 30 years that I can't exceed?

19          MS. ERICKSON:  Yes, Your Honor.

20          THE COURT:  All right.  I can certainly

21  understand their reasons for wanting an even higher

22  sentence.  And I don't minimize in any way the trauma that

23  can be impacted, something that even the defendant should

24  have better understood, having been a victim of --

25  apparently a victim of similar abuses as a very young

1  person.

2      With that said, I will accept the plea agreement,

3  which contains a stipulation to uncharged criminal

4  conduct, on the basis of my findings that the offense of

5  conviction adequately reflects the defendant's criminal

6  conduct and the plea agreement does not undermine the

7  statutory purposes of sentencing.

8      In determining the defendant's sentence, I will take

9  into consideration the advisory sentencing guidelines and

10  be governed by the statutory purposes of sentencing set

11  forth at Section 3553(a) of Title 18.

12      As for the guidelines, while neither party filed

13  objections to the presentence report, the defendant did

14  note clarifications and corrections that were incorporated

15  into the revised report.  Since these changes have no

16  impact on the guideline calculation, I find the probation

17  office calculated the advisory guideline range correctly

18  using the current manual and taking into account all

19  relevant conduct under Section 1B1.3.

20      Under Application Note 1, Section 1B1.2, a plea

21  agreement stipulating to the defendant's commission of an

22  additional uncharged criminal offense must be treated as

23  if the defendant had been convicted of that offense as

24  well.  In this case the defendant stipulated to committing

25  a second violation under Section 2251(a) of Title 18

1  involving a 15-year-old minor.  Accordingly, the

2  guidelines are applied as if he had been convicted on two

3  counts of production of child pornography.

4      In addition, under Section 3D1.2, offenses involving

5  a sexual exploitation of minors are specifically excluded

6  from being grouped.  Instead, a combined offense level is

7  determined by taking the adjusted level of the highest

8  offense and increasing that level by the appropriate

9  number of units set forth in Section 3D1.4.

10      Here the guideline for production of child

11  pornography, in violation of Section 2251(a) of Title 18,

12  is found at Section 2G2.1.  Under subsection 2.1(a), the

13  base offense level is 32 as to both the count of

14  conviction as well as the stipulated offense.

15      However, as to the count of conviction, four more

16  levels are added under subsection 2.1(b)(1)(A) because the

17  offense involved a minor who had not yet attained the age

18  of 12 years.  Specifically, the defendant recorded

19  sexually explicit video of Minor A, as has been referred

20  to in this record and as cited in the indictment.  That

21  minor was at that time approximately seven years of age.

22  In contrast, only two levels are added under subsection

23  2.1(b)(1)(B) to the stipulated count because the minor

24  victim had, by stipulation, attained the age of 12 years,

25  but not the age of 16 years.

1      Each count is also assessed two additional levels
2   under subsection 2.1(b)(3) because the defendant knowingly
3   created sex videos and images of both minors which were
4   then distributed to a person identified by the defendant.

5      Accordingly, the highest adjusted offense level as to
6   the count of conviction is 38 and the adjusted offense
7   level as to the pseudo count is 36.  With one unit
8   assessed for each count, the corresponding increase to the
9   combined adjusted offense level is 40.

10      Moreover, violations of Section 2251(a) of Title 18
11   are covered sex crimes.  Neither Section 4B1.1, as a
12   career offender, nor subsection (a) of Section 4B1.5
13   applies.

14      And the defendant engaged in a pattern of activity
15   involving prohibited sexual conduct.  Specifically, the
16   defendant sexually assaulted each minor on multiple
17   occasions in 2019 and '20, making him a repeat and
18   dangerous sex offender against minors.  Under Section
19   4B1.5(b)(1), therefore, five more offense levels must be
20   added to the level determined under Chapters Two and
21   Three, increasing the applicable offense level here to 45.

22      The defendant does qualify for a three-level downward
23   adjustment under Section 3E1.1 because he accepted
24   responsibility by pleading guilty and the government has
25   moved for an additional one-level reduction.  This leaves

1  the defendant with a total offense level of 42 and a

2  criminal history category of I, resulting in an advisory

3  guideline imprisonment term of 360 months under Section

4  5G1.1(c).

5      Before I hear from counsel and the defendant, I note

6  that it looks like someone has asked to be admitted.  I'm

7  wondering if, Ms. Erickson, you can identify Ms. Aemus

8  Balsis.

9          MS. ALTMAN:  That's an agent, Your Honor, a law

10  enforcement agent.

11          THE COURT:  Do you know if they're aware of the

12  option of viewing on YouTube now that it's been enabled?

13          MS. ALTMAN:  I don't know if he is or not.  I can

14  send him an email quick.

15          THE COURT:  Otherwise we can admit him, but I'll

16  hold off until hearing from counsel that we've cleared

17  that up.

18          MS. ALTMAN:  I sent him an email, Your Honor.  I

19  don't know if it's easier just to let him in.  I know he's

20  not going to speak.  Whichever the Court wishes.

21          THE COURT:  All right.  Why don't we just admit

22  him.  I'm not sure -- it looks like I have that ability,

23  Mr. Wiseman, but maybe it's more appropriate if you do it.

24          THE CLERK:  Very well.  I'm admitting him now.

25          THE COURT:  And now, Officer Balsis, I understand

1    that you perhaps didn't get word that the YouTube

2    streaming is now working.  And you're welcome to

3    participate or listen in if you would simply mute your

4    mic.

5        We are continuing.  I've just identified the

6    applicable guideline range and we're proceeding to

7    sentencing.  For the benefit of all, because the defendant

8    has a total offense level of 42 and a criminal history

9    category of I, he faces an advisory guideline imprisonment

10    range of 360 months under Section 5G1.1(c).

11        I have the benefit of the defendant's sentencing

12    memorandum recommending the statutory minimum of 15 years

13    and the government's agreed-upon recommendation of 20

14    years as well as one of the victims requesting a life

15    sentence, notwithstanding the statutory cap of 30 years.

16        I'm having trouble getting to a minimum sentence

17    here.  Frankly, I'm not sure that even 20 years is

18    adequate, given the apparent risk that the defendant

19    represents.  But 20 years from now we may have a better

20    understanding of the reason for the defendant's conduct

21    and hopefully a better means of treating that conduct, so

22    I am weighing that in thinking about an appropriate

23    sentence.

24        With that said, I am interested in anything else that

25    either side wishes to say and of course I do want to hear

1  from the defendant before deciding on an appropriate

2  sentence.  So I'll begin with you, Ms. Altman, for the

3  government.

4          MS. ALTMAN:  Thank you, Your Honor.  The

5  government would submit this is not a case where the

6  15-year mandatory minimum is warranted, for several

7  reasons.  First, as has already been indicated, there are

8  two victims, not just one, which is bad enough, but in

9  this case there's two.  And with each victim --

10         THE COURT:  Officer Balsis, if you're going to be

11 on the video, then either put your cap on or leave it off,

12 but it's distracting.  And I'm surprised that you would

13 behave in this manner.  Thank you.

14      I apologize, Ms. Altman.  If you could go ahead.

15         MS. ALTMAN:  Thank you, Your Honor.  With each

16 victim there is not just, and I mean "just" sort of in

17 quotation marks, one contact.  There were numerous

18 contacts.  With Minor A, who's the victim in the

19 indictment, there was sexual contact at least nine

20 different times.  The minor that we're calling Minor SC,

21 for stipulated conduct, he reported contact at least 15 to

22 20 times and reported that he woke up to find the

23 defendant having sexual contact with him.

24      In each of these cases the defendant used goods to

25 try to not only allow for the sexual conduct, but also to

1  keep them quiet.  In one of the videos the defendant can

2  be heard telling Minor A, "I'm going to buy you a lot of

3  toys.  Just keep going."  And according to Minor SC, the

4  older child, the defendant bought him electronics, gave

5  him cash and threatened that he would take these items

6  away if this child ever reported on him.

7       Now, the conduct itself is bad enough.  It's quite

8  horrific, actually.  But then he goes ahead and films it,

9  which amplifies the conduct and allows the abuse to be

10 relived over and over again, and in this case not just by

11 the defendant, but he shared it.  He shared it with

12 someone he met on Instagram.  So these videos are out

13 there forever.  The only good thing is that it appears

14 that you can't see the victim's face in them, most of

15 them, which saves the victims that pain and anxiety, but

16 it's still an aggravating factor.

17      In addition to the numerous videos found of each of

18 these two children, there were also videos of other child

19 pornography and those are described in the presentence

20 report.

21      In his interview initially with the police, he denied

22 contact at all with Minor A and then he reported that

23 Minor A did it on his own, which is totally belied by the

24 videos and is also pretty absurd that a seven-year-old

25 would do that.

18

1           THE COURT:  I was going to say, also irrelevant,

2   but go ahead.

3           MS. ALTMAN:  And with regard to Victim SC, the

4   older child, he blamed most of the contact on the child as

5   opposed to himself and in fact said that the child

6   reported that he was going to rape him, which is just

7   offensive on so many levels.

8       He also claimed that the phone's camera was turned on

9   without his knowledge, which as we know is just not likely

10  or true and is also belied by the fact that the videos

11  were filed under the kids' names, so he obviously knew

12  what was happening and wanting the results of them.

13      The final thing the Court should take into

14  consideration is, as the victim's mother reported, this is

15  something that is a struggle for her family every day and

16  that's what we know from the victims of sexual assault and

17  child pornography.

18      And for those reasons, the public needs protection

19  from this defendant and his contact -- conduct warrants a

20  20-year sentence.  And that's what I'm recommending, is

21  the 20 years.

22           THE COURT:  And for the victims who are listening

23  in, not only do I take note of all of those facts, which

24  were already provided to me in a detailed presentence

25  report, but other aspects of the crimes here and the

1  likelihood of other conduct by this victim.

2      I will hear then from defense counsel, understanding

3  that I've had the benefit of your written sentencing

4  memorandum.  Anything that you wish to make clear for the

5  record, I'll certainly give you equal leeway.

6          MS. WELSH:  Thank you, Your Honor.  To some

7  extent, I am going to repeat briefly the arguments that I

8  made in my sentencing memo because I think they are

9  responsive to the government's arguments.  But the first

10 is Mr. Torres did what many people do when they're

11 confronted with their own terrible crimes, which is try to

12 deny involvement and get out of it.  Clearly the excuses

13 that he made and the things that he said just were not

14 believable at all and were particularly terrible,

15 especially trying to blame the children.

16     With time, as I noted in my sentencing memo, he's

17 been able to reflect on just the horrible things that he

18 has done and how reprehensible his crimes are and the

19 damage that he has done to these children.  As the Court

20 noted, he suffered from that himself.

21     We can't dispute the things that the government

22 argues.  But again I think it is important for everyone to

23 understand that this is Mr. Torres's first-ever criminal

24 conviction, the first time he has ever been in jail for

25 any crime, and it will be the first time that he will

1   spend any term of incarceration in a prison, let alone a

2   federal prison.

3       And the Court -- and a 15-year sentence is not

4   insignificant for a first offense.  And as I noted in my

5   memo, it will go a long way to protecting the public, well

6   into Mr. Torres's mid 30s.  I did touch on this also in my

7   memo, Your Honor, that --

8           THE COURT:  Just so we're clear, Ms. Welsh, I

9   don't view 15 years as an insignificant sentence.  I'm

10  just struggling with the severity of his conduct, repeated

11  conduct, his manipulation of the minors involved and the

12  risk that he presents to the public unless he has a major

13  break-through through therapy, something he hasn't been

14  receptive to to date, but hopefully will be while

15  incarcerated.

16          MS. WELSH:  Yes, Your Honor, and that was the

17  last point I was going to make to address the risks that

18  he would pose to the public.  He has never engaged in any

19  meaningful treatment, not even for his significant mental

20  health issues, his depression and anxiety.  But we don't

21  have the benefit at this point and he doesn't have the

22  benefit of the intensive sex offender treatment that he is

23  going to undergo both while he's in custody and the after

24  care upon his release.

25      And hopefully the expectation would be that his

1  meaningful participation in not only therapy for himself,

2  but sex offender treatment, will encourage him to have

3  these break-throughs and reduce the risks that he has to

4  the public.

5       Clearly, when he was confronted by law enforcement,

6  he didn't have the benefit of sex offender treatment and

7  knowing exactly and understanding exactly the damage that

8  he caused and he will upon his release from custody here.

9  Thank you.

10          THE COURT:  Thank you, Ms. Welsh.  Then I will

11  turn to you, Mr. Torres, for any comments that you wish to

12  make to the Court before I render sentence.

13          THE DEFENDANT:  Yes, Your Honor.  Let me start

14  off by saying that I have made -- I know that what I did

15  was wrong.  I realize that now, after being incarcerated

16  for the past year, that it's not something that, I don't

17  think, can be forgiven easily.  I know I must stop and I

18  own up to it.

19       I accept responsibility of what went on.  I can't

20  change the past.  But if I was given the chance to do so,

21  I would.  I would have reached out for help with my mental

22  treatment, since I feel as that played a role in what went

23  on.  I was in a very dark spot for the past two years and

24  didn't know what to even do with myself throughout the

25  years at some point.

1        But I just want to apologize, give my sincerest

2   apologies to my victims, and just to have them know that I

3   never -- it was never my intention to induce mental trauma

4   to them the way I did.  Thank you.

5            THE COURT:  And what's so hard about that to

6   understand is that you'd experienced it yourself.  You've

7   attributed much of your own mental health struggles to

8   what was done to you at the age of nine.  And the

9   incredible disconnect that you made to not view what you

10  were doing to minors yourself as causing them damage, it

11  is just really hard to understand, much less accept.  It's

12  not to say that there isn't a possibility for you to be

13  treated and perhaps to better understand it and perhaps

14  the pain you inflicted will be motivation to never give in

15  to these dark and ugly acts again.

16       As far as forgiveness, that's really up to the

17  individual minors who will have to work through this

18  themselves.  Hopefully they'll get treatment and process

19  this.  There are programs available to them, but it's

20  entirely up to them if they're able to forgive what's

21  happened to them.  There are a lot of studies that suggest

22  that kind of forgiveness can be incredibly healing, but

23  that's between the victim and those who care about them,

24  including therapists.

25       For you, you're going to have to process this in a

1   way you never have before.  And I can only hope that you

2   take seriously the treatments that will be offered to you

3   both during your period of incarceration as well as under

4   federal supervision.

5       As I say, hopefully we'll learn to better understand

6   why it is people make this choice.  The internet has

7   contributed to it.  But what we're learning is that it's

8   been going on for a very long time, it's just the internet

9   has given access to those who have been victimized as well

10  as the victimizers.  And I can only hope that we all get a

11  better understanding as to why and how this occurs.

12      I hope you appreciate that the severity of your

13  conduct does require a significant sentence.  As you know,

14  you face a minimum of 15 years and a maximum of 30 years.

15  Is there anything else that you wish to add before I

16  render sentence?

17          THE DEFENDANT:  Yes, Your Honor.  I just want to

18  also add that I know that once I do get the treatment, the

19  help I need, that I will become a better person, I will be

20  a better person, and I will seek out the help that I

21  should have gotten from the beginning.  Thank you.

22          THE COURT:  I am prepared to render sentence.

23  The defendant was raised by his parents in Chicago,

24  Illinois.  While describing his childhood in generally

25  positive terms and maintaining close relationships in

1  adulthood with parents, siblings, extended family and

2  childhood friends, the defendant experienced at least one

3  incident of sexual abuse when he was nine years of age in

4  an alley when walking home from school.  I suspect that

5  this may be one of other abuse that the defendant will

6  have to confront.  But regardless, he believes it was a

7  catalyst for his ongoing struggle with anxiety,

8  depression, panic attacks and suicidal ideations as well

9  as self-medicating with alcohol, marijuana and so-called

10  "club drugs" throughout his teenage years.

11      Still the defendant reportedly has resisted mental

12  health treatment in the past despite encouragement from

13  his father.  He attempts -- or his attempts at suicide are

14  unverified, but his struggles with anxiety and depression

15  are well documented.

16      Despite the defendant's personal challenges

17  throughout his young life, when his criminal behavior

18  began is unclear.  The defendant graduated from high

19  school and was repeatedly able to get good jobs in the

20  years that followed.  Throughout his life he has also had

21  supportive family and friends in which to confide.  Among

22  the few anomalies in his life before these crimes was his

23  inability to maintain a job for more than a year at a

24  time.

25      What is clear, from at least late 2019 through April

1  of 2020, is that the defendant produced, distributed and

2  possessed sexually explicit videos and images of two minor

3  boys, age 15 and 7, that were known to him through friends

4  and acquaintances.

5       In addition to these images and videos depicting

6  victims known to him, the defendant was in possession of

7  hundreds of other images of sexual acts involving

8  prepubescent males and females.  Although claiming he was

9  being blackmailed to do so, the defendant also admitted

10  exchanging sexually explicit content with another

11  individual online.

12       In addition, the defendant's online presence was

13  vast, consistent with his interest in technology, gaming

14  and social media.  He met people online frequently,

15  including his two most recent dating relationships who

16  reside out of state and even out of the country.

17       During his interviews with investigators, the

18  defendant went so far as to blame the older of two

19  victims, preferring to see himself as helpless or out of

20  control rather than taking ownership of his egregious

21  behavior, something he claims he is willing to do now.

22  The defendant also denied abusing his younger victim more

23  than once.  The defendant's perception of his crimes

24  demonstrates that he neither grasps, and perhaps does not

25  still grasp, the severity of his behavior nor the damage

1  he has caused others.

2      Despite having no criminal history, the evidence

3  suggests deep-seated, ongoing mental health and sexual

4  issues that will require intensive treatment and personal

5  introspection to address.  Moreover, his lack of insight

6  and deviousness make him a substantial danger to minors,

7  as reflected by his purchasing expensive gifts to keep

8  victims from reporting his ongoing abuse.

9      Taking into consideration the nature of the offense,

10 as well as the defendant's personal history and

11 characteristics, I am persuaded that a lengthy custodial

12 sentence, if somewhat below the guideline, is reasonable

13 and no greater than necessary to hold the defendant

14 accountable, as well as protect the community, provide the

15 defendant the opportunity for rehabilitative programs and

16 achieve parity with the sentences of similarly-situated

17 offenders.  This departure is based on Section 5K2.0 as

18 well as the guidance under Section 3553(a)(6) of Title 18.

19     As to Count 1 of the indictment, therefore, it is

20 adjudged that the defendant is committed to the custody of

21 the Bureau of Prisons for a term of 240 months.  I

22 strongly recommend that the defendant receive mental

23 health and sex offender treatment as well as substance

24 abuse evaluation and recommended treatment, educational

25 and vocational programming.  I also recommend that the

1 defendant be afforded prerelease placement in a

2 residential reentry center with work release privileges.

3     I did not note a specific request from the defense as

4 to location of placement, but I'll certainly hear if there

5 is any request in that regard.

6         MS. WELSH:  Yes, Your Honor, close to his family

7 in Chicago.

8         THE COURT:  I will certainly make that

9 recommendation, although as counsel is aware, the Bureau

10 of Prisons will ultimately decide placement.

11     I also note that the defendant is in primary state

12 custody in Taylor County, Wisconsin, Circuit Court Case

13 No. 20CF29.  According to the United States Supreme

14 Court's ruling in *Setser v. United States*, I have the

15 discretion to indicate whether the federal sentence is

16 intended to run consecutively to or concurrently with any

17 sentence that may be imposed in a pending court case.

18 Given that the conduct at issue here appears to be

19 identical to that charge, my sentence will and is to run

20 concurrent with any sentence imposed in that case and will

21 start today.

22         MS. WELSH:  Your Honor, may I address one

23 additional issue as it relates to that?

24         THE COURT:  Yes.  I was about to address the time

25 spent.  Is that what you were going to raise?

1          MS. WELSH:  No.  There is a new pending case with

2     the stipulated victim.  That is Rusk County, Case No.

3     21CF23.  And so I would also ask that the Court run its

4     sentence concurrent to both the Taylor County and Rusk

5     County cases.

6          THE COURT:  And since I've heard from you,

7     Ms. Altman, I will certainly hear from the government as

8     well.

9          MS. ALTMAN:  I don't have any objection to that,

10    Your Honor.  It is the same conduct.

11         THE COURT:  All right.  Then, Ms. Welsh, if you'd

12    be good enough, for the record, to just indicate again.

13    It's Rusk County Circuit Court case number what?

14         MS. WELSH:  21CF23.

15         THE COURT:  All right.

16         MS. WELSH:  Thank you, Your Honor.

17         THE COURT:  And I wasn't aware of this before

18    this moment.  I'll just ask Officer Stieve if you're able

19    to confirm that the conduct is consistent with that I've

20    considered today for the federal sentence.

21         OFFICER STIEVE:  Your Honor, I was also not aware

22    of this new pending case, so I can't really speak to that.

23         THE COURT:  Well, I'm going to accept the

24    representation of counsel that that's the case, although

25    it would be a material error if not.  I'm not sure what --

1   whether that can be undone once I enter sentence.

2       Ms. Altman, do you have any reason to be concerned

3   about the representation?

4           MS. ALTMAN:  I don't, Your Honor.  I am not aware

5   of any other conduct or any other victims.  I have not

6   been made aware of any.  And I was told at one point there

7   was going to be charges on the second victim, so it would

8   make sense that it is, but I have not confirmed that

9   either.

10          MS. WELSH:  And I would just note, Your Honor, I

11  did mention the Rusk County case in my sentencing memo

12  which I filed on February 10th, that the case has been

13  pending, has been in the record for a week now.

14          THE COURT:  Yeah.  In the future, calling it to

15  the attention of the probation officer would be

16  preferrable if you wanted the treatment you're now asking

17  for.  But in fairness, you did note it.  It appears to be

18  what it is.  And relying on that representation, I will

19  make my sentence concurrent with both cases.

20      Moreover, if the pending state case or cases are

21  dismissed, the Bureau of Prison may credit any time spent

22  in state custody to this sentence, provided it has not

23  been credited to any other sentence.

24      The defendant's term of imprisonment is to be

25  followed by a 30-year term of supervised release.  In

1 addition to the statutory mandatory conditions of

2 supervision, in light of the nature of the offense and the

3 defendant's personal history, I adopt Condition Nos. 1

4 through 24 as proposed and justified in the presentence

5 report, noting that neither party has raised any

6 objections to those proposals.

7     Under the Sentencing Reform Act of 1984, supervision

8 in this case will not only meet the goals of correctional

9 programming and rehabilitation, but assist in deterring

10 further criminal conduct and protecting the public.

11     Specifically, the defendant recorded himself sexually

12 abusing 15-year-old and 7-year-old boys on multiple

13 occasions.  He distributed these video images to an

14 individual online and possessed thousands more images of

15 child pornography.  The defendant also provided gifts and

16 material items to his victims so they would not report his

17 crimes.

18     The defendant further experienced his own abuse at a

19 young age, struggled in school and experimented with drugs

20 at an early age in an apparent attempt to self-medicate

21 mental health symptoms.  In need of mental health and

22 substance abuse treatment, the defendant also retained

23 employment for periods time shorter than one year,

24 depending on the emotional and financial support of his

25 family, particularly his parents.

1       Finally, the instant offense is not drug related and

2   the defendant's history of drug use means that I do not

3   waive drug testing under Section 3583(d) of Title 18,

4   which is addressed in Special Condition No. 17.  All of

5   the conditions imposed today will be crucial to ensuring

6   the defendant's transition back into society and

7   protecting the public.

8       As counsel is aware, despite my findings, there is at

9   least some question as to whether I should enter each of

10  the conditions on the record verbatim as well as justify

11  them individually, and I am certainly willing to do so

12  unless the defense wishes to waive my doing it.

13          MS. WELSH:  We do waive, Your Honor.

14          THE COURT:  If, when the defendant is released

15  from confinement to begin his term of supervised release,

16  either he or the supervising probation officer believes

17  any of the conditions imposed today are no longer

18  appropriate, they may certainly petition the Court for a

19  review and modification.

20      I just urge the defendant to play straight with the

21  supervising officer and reach agreement on supervision.

22  If it becomes apparent that the defendant is engaged in

23  any deviousness or failure of candor, it would be grounds

24  to revoke his supervision.

25      It is adjudged the defendant is to pay a $100

1  criminal assessment penalty to the Clerk of Court for the

2  Western District of Wisconsin, which is required by

3  statute and immediately due following sentencing.  I

4  encourage the defendant to pay that assessment as agreed

5  in the plea agreement, if at all possible, to avoid

6  preclusion from programming while in the federal prison

7  system for nonpayment, although checking off a small

8  reduction each month from any earnings while imprisoned

9  will hopefully cause the same impact.

10      The victim in this case has not made a specific

11  request for restitution.  However, as noted in the plea

12  agreement, the defendant did agree to pay restitution.

13  Pursuant to the Amy, Vicky, and Andy Child Pornography

14  Victim Assistance Act of 2018, which applies to offenses

15  that occurred after November 7, 2018, if the defendant's

16  conviction is for trafficking in child pornography, as

17  here, the Court shall order restitution under Section

18  2259(b)(2) of Title 18 in an amount that reflects the

19  defendant's relevant role in the causal process that

20  underlies the victim's losses, but which is no less than

21  $3,000.

22      Subject to limitations, a victim of "trafficking in

23  child pornography" offense may elect to receive a one-time

24  $35,000 (indexed for inflation) defined monetary

25  assistance payment from the Child Pornography Victims

1  Reserve established under Section 1402(d)(6) of the

2  Victims of Crime Act of 1984.  And for the victims who are

3  participating, I'm certain that the United States

4  Attorney's victim coordinator would assist you in

5  petitioning for compensation.  I do impose a restitution

6  order of $3,000 as to each victim under that Act, but,

7  because the defendant is indigent, waive any assessment

8  that could be imposed under the Justice for Victims of

9  Trafficking Act of 2015.

10      I also find that the defendant does not have the

11  economic resources to allow himself to make full payment

12  of the restitution order in the foreseeable future under

13  any reasonable schedule of payments.  And, therefore, he's

14  to be making nominal payments of a minimum of a hundred

15  dollars each month under Section 3664(f)(3)(B) of Title 18

16  beginning within 30 days from his release from custody.

17  No interest shall accrue on this principal amount.

18      The defendant shall notify the Court and the United

19  States Attorney General of any material change in the

20  defendant's economic circumstances that might affect his

21  ability to pay restitution.

22      The defendant also lacks the means to pay a further

23  fine under Section 5E1.2(c) without impairing his ability

24  to support himself upon release from custody and so I

25  impose no further fine.

1     A final order of forfeiture is granted for the

2 property seized from the defendant, as reflected in the

3 forfeiture order, in accordance with Section 2253 of Title

4 18 of the United States Code.

5     The U.S. Probation Office is to notify local law

6 enforcement agencies and the state attorney general of the

7 defendant's release back into the community.

8     At this time I'll simply ask the defense whether or

9 not I have sufficiently addressed the defendant's main

10 arguments in mitigation.

11         MS. WELSH:  Yes, Your Honor.

12         THE COURT:  And I'll ask the government if you

13 wish to move for dismissal of the remaining count.

14         MS. ALTMAN:  I do, Your Honor.  And if I may have

15 one minute to address restitution as well.

16         THE COURT:  You may.  I will grant the motion as

17 to Count 2 and I'll hear you as to restitution.

18         MS. ALTMAN:  Thank you, Your Honor.  It's my

19 understanding of the new restitution statute -- I guess

20 it's not that new anymore -- that notwithstanding the

21 $3,000 mandatory nature of it, there still has to be a

22 request by the victims to trigger the $3,000 payment.  At

23 this point we don't have that.

24     If we could have 30 days just to verify that they're

25 not going to make the request, that would be appreciated.

1   The guidance that we've gotten is that without a request,

2   that fund has not yet been set up and that it's not

3   triggered.

4           THE COURT:  All right.  Then I will give you 30

5   days to indicate whether you wish it to be -- restitution

6   to be entered, $3,000 per victim.

7           MS. ALTMAN:  Thank you.

8           THE COURT:  And if I don't hear from you within

9   30 days, then that will not be imposed.

10          MS. ALTMAN:  Thank you.

11          THE COURT:  Is that acceptable to the defense as

12  well?

13          MS. WELSH:  Your Honor, I do object to a 30-day

14  continuance.  I'm confident that the victim witness

15  coordinator had discussed this with the victims and they

16  did not make a request before sentencing today.  I object

17  for purely legal purposes, Your Honor.

18          THE COURT:  Yeah.  I was going to say, I would

19  often set aside a restitution hearing after entering

20  sentence.  And the fact that they may not have asked for

21  it before the date of sentencing has never been a

22  requirement in this Court and it's not one now.  If

23  there's any concern as to their waiver, I think a 30-day

24  notice period is appropriate and so I do leave that open

25  for 30 days.

1        My final obligation, Mr. Torres, is to advise you of

2   your right to appeal this Court's sentence.  I did not

3   arrive at it lightly.  I truly hope and pray that you're

4   able to find the insight necessary to not be a risk to

5   others upon release, but I just was not confident of that.

6   As I say, there may be advances made that will make it

7   more likely, but it really comes down to you.

8        If you are sincere in your desire to address your

9   conduct, you'll have a chance to do that within the

10  treatment programs in the federal prison and to continue

11  it under close supervision upon release, and I only hope

12  that that's what you accomplish.

13       But you have a right to appeal my sentence.  You only

14  have 14 days to file a notice of appeal.  And I'm

15  confident that Ms. Welsh would assist you in filing a

16  notice of appeal, so you should discuss the filing and

17  possible grounds with her as soon as possible.  Someone

18  else may be appointed to represent you on appeal.

19       With that said, I'll hear if there's anything more

20  for the government at this time.

21            MS. ALTMAN:  Nothing, Your Honor.  Thank you.

22            THE COURT:  Anything more for the defense?

23            MS. WELSH:  No, Your Honor.  Thank you.

24            THE COURT:  Good luck, Mr. Torres.  And for the

25  victims, I hope you are able to get treatment and to find

1  some measure of healing with respect to the egregious

2  injury caused.  We are adjourned.

3       (Adjourned at 2:10 p.m.)

4                              ***

5            I, CHERYL A. SEEMAN, Certified Realtime and Merit

6  Reporter, in and for the State of Wisconsin, certify that

7  the foregoing is a true and accurate record of the

8  proceedings held on the 17th day of February, 2021, before

9  the Honorable William M. Conley, of the Western District

10 of Wisconsin, in my presence and reduced to writing in

11 accordance with my stenographic notes made at said time

12 and place.

13 Dated this 4th day of March, 2021.

14

15

16                    _____

17                    Cheryl A. Seeman, RMR, CRR
                       Federal Court Reporter

18

19

20

21

22

23 The foregoing certification of this transcript does not
   apply to any reproduction of the same by any means unless
   under the direct control and/or direction of the

24 certifying reporter.

25